UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Dean Davis, et al.**

    **v.**                                    Case No. 11-cv-436-PB
                                             Opinion No. 2013 DNH 055
**John S. Ciborowski Family Trust,
et al.**


<u>MEMORANDUM AND ORDER</u>


The Americans with Disabilities Act ("ADA") requires the owner of a commercial facility to take feasible measures when altering the facility to ensure that the altered areas are accessible to and usable by persons with disabilities.  These requirements apply, however, only if an alteration "affects or could affect the usability of a facility or part thereof . . . ."  42 U.S.C. § 1283(a)(2).  The issue presented by the current motions for summary judgment is whether alterations defendants made to Phenix Hall, a building located in the Downtown Concord Historic District, are subject to the ADA's accessibility and usability requirements.


## I.  <u>FACTS</u>

Phenix Hall is part of the Downtown Concord Historic District.  It houses Bagel Works, a popular local café, and

several retail stores.  It was built in 1893 and is listed on the National Register of Historic Places.

When the John S. Ciborowski Family Trust ("Ciborowski" or "Trust") decided to restore Phenix Hall's storefront to its original appearance, it contacted Concord's Code Administration Department, which is responsible for administering the city's zoning, building, licensing, and health regulations, for approval of the proposed work.  The Trust also consulted the New Hampshire Division of Historical Resources ("DHR"), which oversees the state's historic preservation program, regarding ADA compliance.  The city issued a construction permit on July 27, 2010.  Doc. No. 105-3.  On November 13, 2010, after reviewing the proposed construction projects, the DHR sent Ciborowski an advisory letter concluding that "[a]ccessibility modifications that eliminated the entrance steps to the storefronts would 'threaten or destroy' the historic character of Phenix Hall, and may also be 'technically infeasible' as defined by ADA regulations."[1]  Doc. No. 105-9.

---

[1] For background on the ADA's guidelines on historic preservation issues, see generally Neighborhood Ass'n of the Back Bay, Inc. v. Fed'l Transit Admin., 463 F.3d 50, 65-66 (1st Cir. 2006); Christopher Parkin, Note: A Comparative Analysis of the Tension Created by Disability Access and Historic Preservation Laws in the United States and England, 22 Conn. J. Int'l L. 379, 402-404 (2007).

Construction at Phenix Hall began in the summer of 2010 and continued through the fall.  The construction project included[2]:

- Removal of slate-covered concrete steps and entrance landings, which were replaced with new granite steps and entrance landings;

- Installation of mahogany doors and entranceways to replace metal doors and entranceways;

- Relocation of the front doors so they are centered;

- Removal of the 1950s vintage metal covering the original granite façade;

- Exposure, cleaning, and painting of iron columns;

- Replacement of existing storefront windows with energy efficient windows;

- Removal of metal bases under each window, which were replaced with granite bases;

- Installation of granite pavers below the granite bases in the sidewalk;

- Replacement of a metal airlock with a mahogany airlock.

- Partial restoration of the damaged granite façade, columns, and lentils; and

- Clean-up and painting of the cast iron pillars.

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is

---

[2] I have described the construction activity at Phenix Hall in the light most favorable to the defendants.

entitled to judgment as a matter of law." Fed. R. Civ. P.
56(a).  The court must consider the evidence submitted in
support of the motion in the light most favorable to the
nonmoving party, drawing all reasonable inferences in its favor.
See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first identify the
absence of any genuine dispute of material fact.  Celotex Corp.
v. Catrett, 477 U.S. 317, 323 (1986).  A material fact "is one
'that might affect the outcome of the suit under the governing
law.'" United States v. One Parcel of Real Prop. with Bldgs.,
960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986)).  If the moving party
satisfies this burden, the burden shifts to the nonmoving party
to "produce evidence on which a reasonable finder of fact, under
the appropriate proof burden, could base a verdict for it; if
that party cannot produce such evidence, the motion must be
granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86,
94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.  On cross
motions for summary judgment, the standard of review is applied
to each motion separately.  See Am. Home Assur. Co. v. AGM
Marine Contractors, Inc., 467 F.3d 810, 812 (1st Cir. 2006).

### III.   ANALYSIS

**A.   Title III**

Title III of the ADA prohibits discrimination on the basis of disability in commercial facilities and places of public accommodation. 42 U.S.C. § 12183(a)(2). Because, however, the ADA is "geared toward the future," the Act does not ordinarily require the owner of a facility to take affirmative measures to make the facility accessible to and usable by persons with disabilities.[3] Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 56 Fed. Reg. 35544-01, 35574 (July 25, 1991). Instead, a failure to take such measures will qualify as discrimination only when the owner undertakes new construction or engages in alterations to an existing facility. Id.

Even so, Title III's accessibility and usability requirements do not apply to every alteration to an existing facility. Title III covers only those alterations that "affect or could affect the usability of the facility or a part thereof . . . . " 42 U.S.C. § 12183(a)(2). If an alteration is covered under Title III, the owner must ensure that "to the maximum

---

[3] In certain circumstances not present here, an owner must take affirmative steps to remove architectural barriers to an existing facility. See 42 U.S.C. § 12182(b)(2)(A)(iv).

extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs."  Id.

Although the Act itself does not explain the phrase "affect or could affect the usability of the facility or part thereof," the Department of Justice ("DOJ") has adopted regulations that provide guidance.  The regulations echo the statutory language by explaining that a covered alteration is "a change to a place of public accommodation or a commercial facility that affects or could affect the usability of the building or facility or any part thereof."  28 C.F.R. § 36.402(b).  They go on to list "remodeling, renovation, rehabilitation, historic restoration, changes or rearrangements in structural parts or elements, and changes or rearrangements in the plan configuration or rearrangement of walls and full-height partitions" as examples of alterations that are subject to the Act's accessibility and usability requirements.  Id.  The regulations also explain, however, that "normal maintenance, reroofing, painting or wallpapering, asbestos removal, or changes to mechanical and electrical systems, are not alterations unless they affect the usability of the facility."  Id.

The DOJ has also issued a technical assistance manual that provides several examples of alterations that are subject to the

ADA's accessibility and usability requirements.  The manual
explains that a change of flooring in a store is covered because
it can affect the ability of a person in a wheelchair to travel
throughout the store; a change in the location of a doorway is
covered because the width of the door and the placement of
hardware on the door can affect its usability; and a change in
the location of an electrical element is covered because the
height of the outlet can affect the usability of the outlet by a
person in a wheelchair.  ADA Title III Technical Assistance
Manual III-6.1000 (1993), available at www.ada.gov/taman3.html
(as visited April 1, 2013) ("ADA Manual").

**B.   Application**

    1.  Defendants' Motion

Defendants present two arguments in support of their motion
for summary judgment.  First, they argue that the changes to
Phenix Hall are not covered alterations because they are purely
cosmetic and have no actual effect on the usability of the
building.  In the alternative, they argue that the changes are
not covered because they could not feasibly have been made in a
manner that made the building more accessible and usable by
persons with disabilities.  I address each argument in turn.

    a.  Alterations That Affect Usability

Defendants' first argument is based on the premise that

alterations are not subject to Title III unless they actually affect the way the building is used.  I reject this argument because the defendants' underlying premise is inconsistent with the plain language of Title III, its purpose, and the regulations and guidance developed by the DOJ to implement Title III.

The plain language of Title III expressly covers not only changes that "affect" usability, but also changes that "could affect" usability.  The only reasonable interpretation of this language is that it covers alterations that have the potential to affect the usability of the facility if they are made differently.  The defendants' argument that the statute covers only alterations that will affect the usability of the facility if they are made as proposed ignores the phrase "could affect."

Defendants' reading of Title III is also inconsistent with the ADA's anti-discriminatory purpose.  As I have explained, the Act's forward-looking nature requires owners of commercial facilities to take the interests of individuals with disabilities into account when making significant alterations to their facilities.  This purpose would be completely undermined if, as defendants imply, an owner could avoid Title III in perpetuity, even when making major structural changes to a facility, simply by replacing existing elements, unusable by

disabled persons, with new elements, equally unusable by

disabled persons.  I find no support in the case law for such a

narrow reading of Title III.[4]

It is also impossible to reconcile defendants' 

interpretation of Title III with both the regulations DOJ

adopted to implement Title III and the DOJ's technical

assistance manual.[5]  The regulations provide lists of covered and

presumptively excluded alterations.  Those lists state that

Title III covers remodeling, renovation, and restoration

activities regardless of whether the specific plans for

remodeling, renovation, and restoration will actually affect the

---

[4]  Defendants cite Thompson v. Second Cliff Owners Ass'n, Inc.,
1998 WL 35117067 (N.D. Fla. 1998) for the proposition that an
owner may replace stairs without having to comply with Title
III's accessibility and usability requirements.  I am
unpersuaded by the court's reasoning in Thompson because the
court did not attempt to explain its decision using the language
of Title III.

[5]  To the extent that Title III is ambiguous, both the
regulations and the technical assistance manual are entitled to
deference in resolving any ambiguity.  See Lovgren v. Locke, 701
F.3d 5, 29-30 (1st Cir. 2012) (stating that deference due to
administrative constructions of ambiguous statutes varies
depending on whether the agency interpretation is announced in a
manner that has the force of law); see also Bragdon v Abbott,
524 U.S. 624, 646 (1998)(explaining that the technical
assistance manual is entitled to deference).  Here, however, I
have determined that the relevant statutory language is
unambiguous.  Thus, I do not defer to the DOJ's reading of the
statute.  Instead, I cite the regulations and the technical
assistance manual because they support the plain language
reading of the statutory text.

usability of the building.  Notably, the lists do not even
mention the criterion on which defendants rely - whether the
alterations have an affect on usability as proposed - to
distinguish covered alterations from non-covered alterations.
Instead, they suggest that Title III was intended to cover a
broad range of alterations, excluding only those alterations
that involve "normal maintenance," or similar activities, and
that do not affect usability.  28 C.F.R. § 36.40(b).  For
similar reasons, the technical assistance manual is inconsistent
with the defendants' interpretation of Title III because it
provides several examples of covered alterations such as a
change in flooring or a change in the location of a door that
are subject to Title III without regard to whether the change as
proposed will affect usability.  See ADA Manual at III-6.1000.

In summary, because the plain language of the ADA, the
purpose underlying the act, the DOJ's implementing regulations,
and the DOJ's technical assistance manual are all inconsistent
with the defendants' reading of Title III, I decline to grant
them summary judgment based on their claim that the changes they
made to the building are not subject to Title III because they
had no actual effect on the building's usability.

b.  Alterations That Could Affect Usability

Defendants argue in the alternative that the alterations

10

are not subject to Title III because they could not feasibly
have been made in a manner that would have increased the
accessibility or usability of the facility by individuals with
disabilities.  I reject this argument because it improperly
conflates the test for determining whether an alteration is
subject to Title III, with the test that applies when
determining whether a covered alteration complies with Title
III.

As I have noted, an alteration to a commercial facility is
subject to Title III only if it "affects or could affect the
usability of the facility or a part thereof . . . ." 42 U.S.C.
§ 12183(a)(2).  If this threshold requirement is met, the owner
of the facility must take the interests of individuals with
disabilities into account by ensuring that "to the maximum
extent feasible, the altered portions of the facility are
readily accessible to and usable by individuals with
disabilities, including individuals who use wheelchairs." Id.
Defendants confuse these two requirements.  Thus, they seek to
argue that they are not subject to Title III by arguing that
they did not violate Title III.  Because defendants have based
their request for relief on an argument that is beyond the scope
of the present motions, I deny their request for summary
judgment on this basis.

11

2.   **Plaintiffs' Motion**

Plaintiffs argue in their motion for partial summary judgment that the alterations are subject to Title III because they could have affected the usability of the facility if they had been done differently.  In making this argument, they note that, among other things, defendants removed and replaced the stairs at the entrance to Bagel Works and relocated the front door.  By their nature, they argue, there are countless ways the stairs could have been replaced and the door relocated that could have affected the usability of the building by the general public.  Defendants do not contest the plaintiffs' assertion that there are many ways that the alterations could have been made that would have affected the way in which the building was used by the general public.  Because I determine that this is all that is required to subject a proposed alteration of a commercial facility to Title III, I conclude that the plaintiffs are entitled to partial summary judgment on this issue.

IV.   **CONCLUSION**

In this Memorandum and Order, I determine only that the alterations that the defendants made to Phenix Hall are subject to Title III.  The real question in this case - whether the defendants failed to make their alterations in a manner that,

"to the maximum extent feasible, the altered portions of the facility are readily accessible and usable by persons with disabilities" - is an issue that must be left for a later day. The defendants' motion for summary judgment (Doc. No. 105) is denied, and the plaintiff's motion for partial summary judgment (Doc. No. 106) is granted.  The clerk shall set a status conference to discuss a proposed schedule for the resolution of the remaining issues in the case.

      SO ORDERED.

                    /s/Paul Barbadoro
                    Paul Barbadoro
                    United States District Judge

April 8, 2013

cc:  Aaron Jesse Ginsberg, Esq.
     Cindy Robertson, Esq.
     James P. Ziegra, Esq.
     Jack P. Crisp, Jr., Esq.